IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CV-192-BO

| | | |
|---|---|---|
| ANTHONY FULLER, | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| REX HOSPITAL, INC., | ) | |
|     *Defendant*. | ) | |

This cause comes before the Court on defendant's motion for summary judgement [DE 48]. Plaintiff has responded in opposition, defendant replied, and the motion is ripe for adjudication. For the reasons that follow, the motion for summary judgement is granted.

## BACKGROUND

In May 2020, plaintiffs April Jackson and Anthony Fuller filed this employment discrimination action, bringing four claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(2), *et seq*. Specifically, plaintiff brings claims of (1) discrimination in violation of Title VII; (2) retaliation; (3) hostile work environment; and (3) negligent hiring, retention, and supervision. After a hearing, this Court granted plaintiffs' motion to amend their complaint and granted defendant's motion to dismiss the hostile work environment claim and the state law claim as well as several of the factual allegations as time barred. On November 5, 2020, the Amended Complaint was filed. After mediation, plaintiff April Jackson filed a stipulation of dismissal on December 22, 2021 and was terminated as a party to this case. On February 22, 2022, defendant filed the instant motion for summary judgement.

Plaintiff Fuller, the only plaintiff remaining in this case, began his employment with defendant Rex on May 21, 2007 when he started as a part-time nutrition assistant. Prior to his employment with Rex, plaintiff worked in a variety of industries. Plaintiff holds an Associate of

Arts Degree in entertainment law from the Atlanta Institute of Arts and an associate degree in aviation science from Utah Valley University. During and after high school, plaintiff worked as a ward attendant and mental health assistant in different psychiatric hospitals. He then started his own business in the entertainment and recording field. He then worked as a general manager at Regal Cinemas, a branch manager for Enterprise Rent-A-Car, and a night manager at the Hilton North Raleigh. While employed in a part-time role at Rex, he worked as the Executive Director of Dream Center, a community center with a banquet hall and recreational facilities which employed 15 to 18 people.

In April 2013, plaintiff began working as a delivery technician in the UNC Homecare Specialists Department ("Homecare"). Homecare provides home respiratory services, home medical equipment, and home infusion services to patients of multiple hospitals in the UNC Health Care System. Delivery technicians, also referred to as "drivers," are responsible for delivering, setting up, picking up, and educating patients and their family members on the use of durable home medical equipment and supplies. Plaintiff was supervised by Barbara Knott and Leroy Guay and currently works for defendant Rex. Plaintiff alleges that defendant oversaw and enabled a system of racial discrimination in its homecare department that resulted in African Americans being regularly passed over for management positions in favor of less-qualified white candidates.

Between September 28, 2018 and October 2, 2019, plaintiff applied for ten positions in the UNC Healthcare system. The Court will only consider the latter five applications, because this Court's November 5, 2020 order determined that allegations regarding the first five applications were time-barred. On June 8, 2019, plaintiff applied for the positions of Health Care System Recruiting Specialist and Health Care System Recruiter Senior. Within a matter of days, plaintiff's application was rejected. The Recruiting Specialist position required two years of full-time direct

2

recruiting experience. A black female was ultimately hired for this position. The Senior Recruiter position required four years of direct recruiting experience. No one was ultimately hired for this job posting, as it was canceled and re-posed with a different description. Plaintiff did not apply for the new posting.

On July 15, 2019, plaintiff applied for the position of Health Care System Recruiter and was again rejected. This position required one year of direct experience and preferred candidates with direct recruiting experience in a high-paced, high volume health care or large academic environment managing multiple portfolios. A white male was ultimately hired for this position. On September 23, 2019, plaintiff applied for the position of Health Care System Director Supply Chain Strategic Sourcing and was quickly rejected. This position required seven years of experience directing the full life cycle purchasing process in a hospital-based supply chain environment; additionally, five years of direct supply chain experience in a leadership role overseeing a minimum budget of $500 million dollars was preferred experience. No one was ultimately hired for this position due to change in leadership and the pandemic.

On October 2, 2019, plaintiff applied for the position of Health Care System Distribution Center Manager and was denied two days later. This position required five years of experience in supply chain management, including three years in a supervisory role. A Black man, who was a current employee in the HCS Distribution Center and had acted as the interim Distribution Center Manager while the position was vacant, was ultimately hired for this position.

Plaintiff alleges that he told his managers and human resources about his concerns about an alleged pattern of passing over Black candidates in favor of hiring White candidates multiple times between September 2018 and April 10, 2019. Around January 2019, plaintiff complained to Thomas Shaw, who allegedly stated that he did not know what the EEOC was, and that this topic

3

was over his head. Plaintiff then spoke to Mr. Guay, who allegedly stated that hiring decisions had not been made because of race in part because Mr. Guay had a Black friend. In March 2019, plaintiff voiced his concerns to Ms. Knott. At some point in response to plaintiff's concerns, Mr. Guay said racial slur about African Americans in front of at least two witnesses. On April 10, 2019, plaintiff organized a meeting with Ms. Knott and five other Homecare Department employees to voice their concerns and frustrations over the alleged ongoing pattern and practice of hiring white candidates over black candidates. Plaintiff alleges that defendant's rejection of some of his applications was retaliation for his repeated complains of racial discrimination.

## DISCUSSION

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists, courts view the evidence and inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party ... and [a] fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotations and citations omitted). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). The non-moving party may not rest on mere

4

allegations or denials and cannot present only a scintilla of evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-52 (1986). If there are genuine issues of material fact, a court should not weigh the evidence. *Id.* at 249. Evidence that is "merely colorable" or "not significantly probative" will not suffice to defeat a motion for summary judgment. *Id.* at 249. If the opposing party fails to bring forth facts showing that "reasonable minds could differ" on a material point, then disposition by summary judgment is appropriate. *Id.* at 250; *see also Teamsters Joint Council No. 83 v. Centra, Inc.,* 947 F.2d 115, 119 (4th Cir. 1991). But "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991) (internal citations omitted).

*Discriminatory Hiring Practices*

Defendant asserts that he was not promoted for racially discriminatory reasons. Without direct evidence of race-based discrimination, "a plaintiff's Title VII claim can survive summary judgment if the plaintiff raises a genuine issue of material fact under the burden-shifting framework established in *McDonnell Douglas*. Under this analysis, the plaintiff must first establish a prima facie case of discrimination" *Holley v. N. Carolina Dep't of Admin.*, N.C., 846 F. Supp. 2d 416, 427–28 (E.D.N.C. 2012). In order to state a claim for discrimination under Title VII, alleging discriminatory failure to promote on account of his race, plaintiff must allege (1) that he is a member of a protected class; (2) that his employer had an open position for which he applied; (3) that he was qualified for the position; and (4) that he was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. *Taylor v. Va. Union Univ.*, 193 F.3d 219, 230 (4th Cir. 1999) (en banc). In order to survive a motion for summary judgement, plaintiff "must prove that [the employer's] proffered reason was mere pretext and that race was the

5

real reason for" the adverse employment action. *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 278 (4th Cir. 2000). "One way for an African American [male] to prove the fourth element is by showing that the employer rejected her application for promotion and filled the job with a Caucasian[.]" *Holley*, N.C., 846 F. Supp. 2d at 428. However, "[j]ob performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996).

"In a failure to promote case, the plaintiff must establish that she was the better qualified candidate for the position sought." *Id.* at 960. When courts analyze whether a Title VII plaintiff was in fact qualified for the position he applied for, courts "assess relative job qualifications based on the criteria that the employer has established as relevant to the position in question." *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 259 (4th Cir. 2006). "If a plaintiff makes a strong showing that []he was 'discernibly better qualified' than the candidate selected for a promotion, the plaintiff will have successfully raised a genuine issue of material fact as to whether the employer's proffered justifications for hiring the successful applicant are pretextual." *Holley*, 846 F. Supp. 2d at 438. (quoting *Heiko*, 434 F.3d at 261–62). However, "[w]hen a plaintiff asserts job qualifications that are similar or only slightly superior to those of the person eventually selected, the promotion decision remains vested in the sound business judgment of the employer." *Heiko*, 434 F.3d at 261-62.

There is no dispute that plaintiff is a member of a protected class as a Black man and that plaintiff applied for the Health Care System ("HCS") Recruiting Specialist, HCS Recruiter Senior, HCS Recruiter, HSC Director of Supply Chain and Strategic Sourcing, and HSC Distribution Center Manager positions between June 8, 2019 and October 2, 2019. The Recruiter Senior and Director of Supply Chain postings were canceled and defendant did not hire anyone for those

6

Case 5:20-cv-00192-BO   Document 58   Filed 08/15/22   Page 6 of 12

positions. Therefore, plaintiff has no successful discrimination arguments as to why he was rejected from those two positions. Plaintiff argues that he was qualified for the Recruiting Specialist, Recruiter, and Health Care Systems Distribution Center Manager positions and that he was not promoted to those positions under circumstances that give rise to an inference of unlawful discrimination.

Plaintiff's previous experience is undisputed, though plaintiff argues that defendant should have weighed or valued his previous experience differently. During high school, plaintiff worked as a ward attendant and mental health assistant in psychiatric hospitals. In the 1990s, plaintiff started his own business in the entertainment and recording field. He then worked as a general manager at Regal Cinemas, as a branch manager for Enterprise Rent-A-Car, and a night manager at the Hilton North Raleigh. Plaintiff holds an Associate of Arts Degree in entertainment law from the Atlanta Institute of Arts. Plaintiff began working at defendant Rex in May 2007 as a part-time nutrition assistant. While he was employed part-time, he worked as the Executive Director of Dream Center, a community center with a banquet hall and recreational facilities which employed 15 to 18 people. Since April 2013, Plaintiff has worked as a delivery technician in the UNC Homecare Specialists Department ("Homecare"). In 2018, plaintiff received a degree in aviation science from Utah Valley University.

Defendant employer's job posting for the Recruiting Specialist position indicated that Rex "[p]refer[ed] candidates with two years of direct Recruiting Specialist experience on a high-volume recruiting team in a healthcare setting supporting multiple Recruiters." Defendant's Appendix p. 11. Defendant ultimately hired a Black female who had worked for multiple years in a recruiting role for a professional staffing firm and, before that, for multiple years in a human resources role. Defendant argues that he was qualified for the position because he had recruiting

7

experience from his time working at the Dream Center, Enterprise, and Regal Cinemas. Plaintiff states that he was responsible for all aspects of HR, including draining and developing staff, at the Dream Center. Plaintiff states that he would recruit on college campuses for Enterprise. However no rational trier of fact would think that plaintiff was better qualified that the candidate defendant actually hired, when measuring the qualifications using the employer's job posting. It does not appear that plaintiff met the criteria of the "preferred candidate," because he did not have two years of high-volume recruiting experience in the healthcare field. However, even assuming plaintiff was qualified, plaintiff has not met the necessary standard to show that defendant's reason for hiring someone else was pretextual. Plaintiff has failed to show that he was better qualified than the person Rex actually hired. Plaintiff cannot show that a hiring decision was based on discrimination when the employer hired a candidate more qualified than himself. *See Heiko*, 434 F.3d at 261-62.

Defendant's posting regarding the Recruiter job indicated that defendant was looking to hire someone with a minimum of one year of direct recruiting experience and a bachelor's degree in a field related to recruiting. Plaintiff argues that he fulfilled those criteria with his experience recruiting staff for the Dream Center and for Enterprise. Defendant ultimately hired a white male who had worked for two years as a Talent Acquisition Manager for Randstad Technologies, a professional staffing firm, and had a master's degree in business administration. While plaintiff may be able to show that he possessed the minimum qualifications for the Recruiter job, plaintiff cannot show that he was more qualified than someone who had previously been a professional recruiter. Again, plaintiff cannot show discriminatory failure to promote because he cannot show that he was more qualified that the person ultimately hired.

8

Defendant's posting for the HCS Distribution Center Manager position indicated that Rex desired to hire someone with five years of experience in supply chain management and three years of experience in a supervisory supply chair role. Plaintiff argues that he was qualified for this role because he had at least 4 years of supervisory experience and 7 years of supply chain experience at the Dream Center, Hilton, Enterprise, and Regal Cinemas. Defendant ultimately hired a Black male, Mr. Edmundson, who had worked in the HCS Distribution Center for over five years before his promotion. Edmundson had a supervisory role at the Distribution Center and had acted as the interim manager of the HCS Distribution Center. Defendant essentially hired someone who had already performed the job. Even if plaintiff could show that he was qualified for the position, the decision to promote someone with more directly relevant experience from within a department remains within the " sound business judgment of the employer" *Heiko*, 434 F.3d at 261-62. The Court finds that plaintiff cannot show that he was better qualified than the person actually hired for the position. Further, plaintiff cannot show that defendant was motivated by racially discriminatory intent because defendant hired someone of the same protected class as plaintiff, a black male.

Alternatively, plaintiff may "establish by a preponderance of the evidence that racial discrimination was the (employer's) standard operating procedure the regular rather than the unusual practice." *Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 307 (1977) (alteration in original). Plaintiff offers no credible evidence that defendant had a standard practice of discriminating against Black employees. Due to the statute of limitations of Title VII issues, plaintiff may only contest five job applications, two of which were never filled and two of which were filled by Black candidates. Thus, plaintiff offers only one instance where a White candidate was hired over himself, a Black candidate. Plaintiff offers evidence in his Appendix [DE 54] that

9

Thomas Shaw was a racially insensitive manager and that other employees were concerned about Shaw being promoted over Black applicants. PA 297-311. Plaintiff also offers evidence that other employees viewed the Home Care Department as racially hostile. PA 297-311. Plaintiff offers a signed statement by Matthew Aiken, which details an instance where Thomas Shaw allegedly told Aiken that defendant would do nothing about the EEOC claims made against it. Though this evidence might show that one or two bad apples worked at Rex, it does not further a theory that the Talent Acquisition team was racially motivated when it hired candidates.

Plaintiff also raises the issue that his applications were denied in such short periods of time after he applied that his denied must have been pretextual. Defendant credibly rebuts this by stating that Rex's regular HR practice is to routinely reject applicants within a matter of days, as defendant did in this case. Defendant has offered legitimate, non-discriminatory reasons for not hiring plaintiff. Accordingly, plaintiff cannot satisfy the third or fourth prongs necessary to survive a motion for summary judgement. Plaintiff has not stated a dispute of material fact or that he is entitled to judgement as a matter of law regarding his Title VII failure to promote claim.

*Retaliation*

Plaintiff asserts that he was not promoted in retaliation for reporting alleged discrimination. In order to state a *prima facie* claim for retaliation under Title VII, plaintiff must show (1) that he engaged in protected activity, (2) that defendant took an adverse action against him that a reasonable employee would find materially adverse, and (3) that defendant took the materially adverse employment action because of the protected activity. *Dowe v. Total Action Against Poverty*, 145 F.3d 653, 656 (4th Cir. 1998). Plaintiff may also establish a case using the *McDonnell Douglas* burden-shifting framework. 411 U.S. 792 (1973).

To survive a motion for summary judgement, plaintiff must establish that his protected activity was the but-for cause of the alleged adverse action. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). To satisfy the third element, plaintiff must prove that adverse employment action would not have happened absent the retaliatory motive. *Id.* at 360. "Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the *prima facie* case." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998).

It is undisputed that plaintiff engaged in a protected activity when he complained about alleged racial discrimination and that a reasonable employee would find refusal to promote an adverse employment action. Plaintiff cannot establish that there was a causal connection between plaintiff's reporting and defendant's failure to hire plaintiff for five positions. As stated above, defendant has offered an alternative, non-discriminatory reason–that plaintiff was not the most qualified candidate. Plaintiff also cannot establish that the staff that reviewed and rejected plaintiff's application knew about plaintiff's discrimination complaints. Plaintiff's complaints were made to Thomas Shaw, Manager of the Homecare Distribution Center; Leroy Guay, Director Homecare; Barbara Knott, Regional Director of Continuing Care Services; Tom Williams, then Vice President of Ambulatory Care; Heather Scott, HR Business Partner; and Melanie Fox. Plaintiff's applications were rejected by members of the Talen Acquisition Department, who state they had no knowledge of plaintiff's complaints. Plaintiff has put forth no credible evidence, other than empty assertions, to show that the Talent Acquisition staff members knew of plaintiff's complaints. Accordingly, plaintiff cannot meet the third element and cannot overcome the motion for summary judgement for the retaliation claim.

Plaintiff asserts that the temporal proximity of plaintiff's complaints and his rejections alone is sufficient to demonstrate that defendant was motivated to retaliate against plaintiff for reporting discrimination. "An adverse action that bears sufficient temporal proximity to a protected activity may, along with the existence of other facts, suggest that the adverse employment action occurred because of the protected activity." *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 126 (4th Cir. 2021). Absent supporting facts, the temporal proximity must be "very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Further, absent evidence that the decisionmaker was aware of plaintiff's protected activity, temporal proximity "establishes nothing." *Smyth-Riding v. Sciences and Engineering Services*, LLC, 699 Fed. Appx. 146, 153 (4th Cir. 2017); *see Baqir v. Principi*, 434 F.3d 733, 748 (4th Cir. 2006); *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998); *West v. Thetford Property Mgt., Inc.*, Case No. 7:01- CV-139, 2003 WL 24046924, *6 (E.D.N.C Feb. 14, 2003). Since plaintiff has not established that the decisionmakers knew of plaintiff's complaints, plaintiff's claim cannot survive.

Plaintiff has failed to show that there is a dispute of material fact and defendant has demonstrated that defendant is entitled to judgement as a matter of law. Accordingly, the motion for summary judgement is granted.

## CONCLUSION

Accordingly, defendant's motion for summary judgement [DE 48] is GRANTED.

SO ORDERED, this /0 day of August, 2022.

Terrence Boyle
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

12